UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
JOHN SCOMA

        Plaintiff,

   -against-

CITY OF NEW YORK, *et al*,

        Defendants.
---------------------------------X

**MEMORANDUM AND ORDER**
16-CV-6693 (KAM)(SJB)

KIYO A. MATSUMOTO, United States District Judge:

      Plaintiff John Scoma brought this action under 42 U.S.C. § 1983.  In his second amended complaint, plaintiff alleged eighteen claims, alleging that defendant police officers (together with defendant the City of New York, "defendants") violated his constitutional rights, through the use of excessive force to arrest him on September 19, 2015.  (*See* ECF No. 44, Second Amended Complaint.)  Trial is scheduled to begin on May 10, 2021.  (*See* ECF No. 95, Amended Pretrial Scheduling Order.) By memorandum and order dated January 22, 2021, the court granted partial summary judgment to defendants regarding the use of excessive force as to Officer Francisco Allende's use of a taser, the municipal liability claim, state assault and battery claims regarding Officer Allende's use of a taser, and plaintiff's state constitutional claims.  *See Scoma v. City of New York*, No. 16-cv-6693 (KAM) (SJB), 2021 WL 230295 (E.D.N.Y.

Jan. 22, 2021).  The remaining claims for excessive force under § 1983 and state assault and battery relate to the officers' application of handcuffs and their conduct immediately after the handcuffs were applied.  Plaintiff has not identified the officers involved in his remaining excessive force claims, other than Officer Matthew Brander.  The court assumes the parties' familiarity with the underlying facts of the instant case.

Pending before the court are the parties' respective motions *in limine* to preclude certain evidence from being admitted at trial.  (*See* ECF No. 96, Defendants' Memorandum in Support of Motion *in Limine* ("Def. Mem."); ECF No. 100, Plaintiff's Opposition ("Pl. Opp."); ECF No. 98, Plaintiff's Memorandum in Support of Motion *in Limine* ("Pl. Mem."); ECF No. 101, Defendants' Opposition ("Def. Opp."); ECF No. 119, Defendants' Notice of Objections ("Def. Obj.").)  For the reasons set forth below, the motions are granted in part and denied part.  The court also rules on the parties' respective objections to the trial exhibits below, but reserves decision for the Final Pretrial Conference and trial as to some of the objections.

## LEGAL STANDARD

"The purpose of an *in limine* motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues

that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001). Further, a district court's ruling on a motion *in limine* is preliminary and "subject to change when the case unfolds." *Luce v. United States*, 469 U.S. 38, 41 (1984).

The admissibility of evidence at trial is governed by the Federal Rules of Evidence (the "Rules"). Federal Rule of Evidence 402 ("Rule 402") provides that all relevant evidence is admissible except as otherwise provided by the Constitution, Act of Congress, or applicable rule. Fed. R. Evid. 402. Federal Rule of Evidence 401 defines relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence," so long as "the fact is of consequence in determining the action." Fed. R. Evid. 401. The Second Circuit has characterized the relevance threshold as "very low." *See United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (quoting *United States v. Al-Moayad*, 545 F.3d 139, 176 (2d Cir. 2008)). To be relevant, evidence need not prove a fact in issue by itself, but only have "any tendency to make the existence of any fact that is of consequence to the

determination of the action more probable or less probable than it would be without the evidence." *McKoy v. North Carolina*, 494 U.S. 433, 440 (1990) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 345 (1985)).

## I.  Relevance in Excessive Force Cases

Relevant evidence in an excessive force case concerns "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Bryant v. City of New York*, 404 F.3d 128, 136 (2d Cir. 2005) (internal quotation mark omitted).  According to the Supreme Court, the relevant factors for a jury to consider in determining whether force by the police was excessive include: (1) the severity of the crime at issue; (2) whether the plaintiff posed an immediate threat to the safety of the defendants; (3) and whether the plaintiff actively resisted arrest or attempted to evade arrest by flight.  *Outlaw v. City of Hartford*, 884 F.3d 351, 366 (2d Cir. 2018) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). This determination requires the jury to look to the totality of the circumstances.  *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995); *see also Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015).  "The 'reasonableness' of the amount of force used thus 'must be judged from the perspective of a reasonable

officer on the scene . . . at the moment' the force is used."
*Rogoz*, 796 F.3d at 246-47 (quoting *Graham*, 490 U.S. at 396).

## II. Rule 403 Probative-Prejudice Balancing

In addition to the relevance of the evidence that the
parties seek to offer or exclude in their motions, several other
Rules bear on the court's determination of admissibility.
Evidence that is otherwise admissible under the Rules is
generally subject to the probative-prejudice balancing analysis
provided in Federal Rule of Evidence 403 ("Rule 403").  Rule 403
permits the exclusion of relevant evidence, "if its probative
value is substantially outweighed by a danger of . . . unfair
prejudice, confusing the issues, [or] misleading the jury."
Fed. R. Evid. 403.  District courts wield broad discretion in
making decisions under this probative-prejudice balancing test.
*See Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 327-28 (2d
Cir. 1986); *see also United States v. Abu-Jihaad*, 630 F.3d 102,
131 (2d Cir. 2010) ("We review a district court's evidentiary
rulings deferentially, mindful of its superior position to
assess relevancy and to weigh the probative value of evidence
against its potential for unfair prejudice.")  "In making a Rule
403 determination, courts should ask whether the evidence's
proper value 'is more than matched by [the possibility] . . .
that it will divert the jury from the facts which should control
their verdict.'"  *Bensen v. Am. Ultramar Ltd.*, No. 92-cv-4420,

1996 WL 422262, at *6 (S.D.N.Y. July 29, 1996) (quoting *United States v. Krulewitch*, 145 F.2d 76, 80 (2d Cir. 1944)).  The court applies the foregoing analysis to the parties' pending motions and objections.

## DISCUSSION

The operative claims in this case have been substantially narrowed following this court's decision granting in part and denying in part defendants' motion for summary judgment.  *See Scoma v. City of New York*, No. 16-cv-6693 (KAM) (SJB), 2021 WL 230295 (E.D.N.Y. Jan. 22, 2021).  Plaintiff voluntarily dismissed several other claims originally pled in the second amended complaint.  (*See* ECF No. 75.)  Accordingly, as confirmed by the parties at a May 3, 2021 status conference, all that remains to be tried is plaintiff's claim that excessive force was used in the moments after plaintiff was tased and as he moved or was moved from the interior stairwell to be handcuffed on September 19, 2015.

Plaintiff's Motions:

In the instant motions, plaintiff moves to preclude defendants from introducing: (i) evidence or testimony regarding information made known to police before defendant Brander used the allegedly excessive force; (ii) testimony by Officers Fernando Caches, Argely Delacruz, Francisco Allende, as well as plaintiff's neighbor Christina Cosares as prejudicial and

irrelevant; (iii) evidence or testimony regarding prior lawsuits brought by plaintiff; (iv) evidence related to certain medical records unrelated to plaintiff's left elbow; (v) certain evidence concerning plaintiff's physique, workout regimen, and medical steroid use; (vi) evidence of plaintiff's prior arrest and conviction history; and (vii) pleadings and other litigation documents filed by plaintiff in this action. (*See generally* Pl. Mem.)

### Defendants' Motions:

Defendants move to preclude: (i) evidence of disciplinary histories and prior lawsuits against defendant officers; (ii) suggestions by plaintiff to the jury for a specific dollar amount to be awarded as damages; (iii) any charge to the jury regarding punitive damages; (v) evidence relating to the employment or indemnification of the defendant officers by New York City, including references to defense counsel as "City attorneys." (*See generally* Def. Mem.)

### Trial Exhibits:

Plaintiff objects to the admission of some of defendants' exhibits under the Federal Rules of Evidence, and to documentary evidence from plaintiff's prior civil actions and the litigation documents in this case. Defendants oppose the introduction of certain medical records due to a lack of proper foundation and authentication. (*See* ECF No. 119, Def. Obj.)

The court now addresses the parties' motions in limine and objections in turn.

## I.  Voluntary Dismissal of Certain Named Defendants

As an initial matter, the court will address plaintiff's request to voluntarily dismiss several named defendants.  Plaintiff initially sought to dismiss his claims against defendants Azeem Chatha, Fernando Caches, Damir Vukic, Argely Delacruz, Francisco Allende, Spencer Craven, and Gregory Mannino pursuant to Federal Rule of Civil Procedure 41(a)(2) without prejudice.  (Pl. Mem. at 2-3.)  Defendants agree that certain officers should be dismissed, but argue that any dismissal should be with prejudice because it would be inherently unjust for plaintiff to dismiss claims against the named defendants without prejudice, on the eve of trial after five years of litigation, and avoid any judgment on the merits. (Def. Opp. at 1-3.)

Absent a stipulation joined by all parties, Fed. R. Civ. P. 41(a)(1)(ii), a federal action may be voluntary dismissed by plaintiff after an answer has been filed only "upon order of the court and upon such terms and conditions as the court deems proper."  Fed. R. Civ. P. 41(a)(2).  "Unless otherwise specified in the order, [such] a dismissal ... is without prejudice," *id*., but permission to dismiss an action under this rule "may be conditioned upon the plaintiff

fulfilling whatever terms and conditions the district court, in its discretion, deems necessary to offset the possible prejudice that the defendant may otherwise suffer from the plaintiff dismissing his complaint without prejudice, *Shady Recs., Inc. v. Source Enterprises, Inc.*, 371 F. Supp. 2d 394, 396 (S.D.N.Y. 2005), including a requirement that the dismissal be with prejudice. *See Gravatt v. Columbia Univ.*, 845 F.2d 54, 56 (2d Cir.1988) (district court may convert voluntary dismissal without prejudice to one with prejudice, provided plaintiff is given a subsequent opportunity to withdraw motion).

Here, the court agrees that it would be manifestly unjust for plaintiff to dismiss certain named defendants without prejudice on the eve of trial after five years of lengthy litigation. "To permit the plaintiff to discontinue the case at this late stage, and then to reinstate the same action whenever it felt like it in the future, would authorize intolerable manipulation of the Court's calendar and the defendants' resources." *Shady Recs., Inc.*, 371 F. Supp. 2d at 396. Accordingly, as the court advised the parties at a status conference on May 3, 2021, any dismissal of claims against the defendant officers at this time will only be permitted if the dismissal is with prejudice. *See id.* (granting motion to dismiss pursuant to Rule 41(a)(2) and determining dismissal should be with prejudice where the case was trial ready).

Plaintiff has stated his intention to dismiss defendants Azeem
Chatha, Fernando Caches, Damir Vukic, Argely Delacruz, Francisco
Allende, Spencer Craven, and Gregory Mannino with prejudice (*see*
ECF No. 127), and the court orders that those defendants are
dismissed with prejudice. *See Gravatt*, 845 F.2d at 56 ("[A]n
opportunity to withdraw a motion for dismissal without prejudice
must be afforded a plaintiff before the dismissal is converted
to one with prejudice").

## II.   Plaintiff's Motions in *Limine*

### A. References to "Pre-Tasing" Information

Plaintiff seeks to preclude evidence or testimony
regarding information made known to police before defendant
Brander used the allegedly excessive force (referred to
hereafter as the "pre-tasing" information).  (Pl. Mem. at 3-9.)
Specifically, plaintiff identifies the following categories of
testimony and documents as purportedly "both irrelevant an
prejudicial": any information or observations allegedly learned
from Christina Cosares, any information or observations relating
to Brielle Scoma, any testimony regarding any purported fighting
or yelling heard from plaintiff's home by the initial responding
officers, the event chronology offered by defendants (*see* ECF
No. 118, Defendants' Exhibit List, Ex. B), any information or
events preceding defendant Brander's arrival to the scene.  (Pl.
Mem. at 7-8.)  Defendants oppose plaintiff's motion to preclude

the pre-tasing information known to the officers, countering
that such evidence remains relevant to the jury's evaluation of
defendants' use of force under the Fourth Amendment of the
Constitution.  (Def. Mem. at 3-8; Def. Opp. at 3-5.)

As discussed above and in this court's prior decision
granting in part and denying in part defendants' motion for
summary judgment, "claims that law enforcement officers have
used excessive force . . . in the course of an arrest,
investigatory stop, or other seizure of a free citizen should be
analyzed under the Fourth Amendment and its reasonableness
standard."  *Ketcham v. City of Mount Vernon*, 992 F.3d 144, 148
(2d Cir. 2021) (citing *Graham v. Connor*, 490 U.S. 386, 395
(1989)).  The reasonableness of the force used "requires careful
attention to the facts and circumstances of each particular
case, including (1) the severity of the crime at issue, (2)
whether the suspect poses an immediate threat to the safety of
the officers or others, and (3) whether [the suspect] is
actively resisting arrest or attempting to evade arrest by
flight."  *Id.* at 148-49.  This standard focuses on "'a
reasonable officer on the scene, rather than with the 20/20
vision of hindsight.'"  *Brown v. City of New York*, 798 F.3d 94,
100 (2d Cir. 2015) (quoting *Graham*, 490 U.S. at 397).  Thus,
"[a] court's role in considering excessive force claims is to
determine whether a jury, instructed as to the relevant factors,

could reasonably find that the force used was excessive." *Id.* at 103.

Applying these factors here, the court agrees with defendants that the pre-tasing information plaintiff seeks to preclude is directly relevant to the jury's evaluation of defendant Brander's alleged use of excessive force when restraining plaintiff on September 19, 2015. As summarized in this court's summary judgment decision, the undisputed facts of this case indicate that, based on the pre-tasing information described above, "a reasonable officer could conclude that plaintiff, who refused to comply with the Officers' directions after reportedly assaulting his wife, was reasonably perceived as an individual who had engaged in violence and posed a danger not only to himself, but to the Officers and others in the house." *Scoma*, 2021 WL 230295, at *8. The pre-tasing information was critically relevant to the court's determination that defendant Allende's use of a taser (twice) was reasonable under the circumstances and will again be relevant to the jury's determination as to whether defendant Brander's use of force immediately following the tasing was unconstitutional. *See id.* at *7-8. Indeed, the first *Graham* factor expressly considers the "nature and severity of the crime leading to the arrest," which necessarily requires some explanation regarding how and why the defendant officers -- including defendant Brander --

arrived at the scene of the reported crime, plaintiff's home, and what information the officers possessed at the time force was used in tasing, arresting, and handcuffing plaintiff. *Graham*, 490 U.S. at 396; *see Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) ("[T]he factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time.").

Thus, contrary to plaintiff's contention that the facts relevant to the jury's analysis "should be limited to what plaintiff allegedly did after being tased and before handcuffing," the court concludes that evidence of the pre-tasing information available to the officers, which includes testimony from numerous officers and witnesses at the scene, is relevant to the question of whether defendants used excessive force after the tasing because it is the type of information that a reasonable police officer would consider in determining what appropriate action to take when faced with the circumstances presented on September 19, 2015. *See Amnesty Am.*, 361 F.3d at 124 ("In evaluating plaintiffs' allegations, the factfinder will have to judge the officers' actions in light of the situation as it appeared at the time."). Although some events and information known to the officers occurred before defendant Brander's arrival at plaintiff's home, the jury cannot

assess the reasonableness of defendant Brander's response after plaintiff was tased without some preliminary knowledge about the events and circumstances leading to plaintiff's arrest.

With respect to probable cause, the court has held that defendant Allende was entitled to rely on information learned from his fellow officers in determining that probable cause existed to arrest plaintiff for an ongoing domestic assault. Similarly, in determining whether the use of force was reasonable under the circumstances, the officers could rely on the information learned from their fellow officers and on their own observations at the scene. *See Scoma*, 2021 WL 230295, at *7; *see also Cordero v. City of New York*, 282 F. Supp. 3d 549, 561 (E.D.N.Y. 2017) ("The fellow officer rule, also known as the collective knowledge doctrine, allows one officer to make an arrest based on an instruction or information passed from one officer to another." (citing *United States v. Hensley*, 469 U.S. 221, 233 (1985))). Defendant Brander testified that when he arrived at plaintiff's home, he learned from another officer that plaintiff, who was resisting arrest, was inside the home and had allegedly assaulted a female. (*See* Pl. Mem. at 5-6 (citing Brander Dep. 34:2-35:16).) Thus, under the same reasoning discussed above, defendant Brander was entitled to rely on the pre-tasing information learned from his fellow officers in determining the appropriate action to take. This

14

pre-tasing information necessarily included information conveyed to the officers at the scene of the crime by Ms. Cosares and Ms. Scoma before defendant Brander arrived, and, accordingly, is relevant and admissible.[1]  For these reasons, the court denies plaintiff's motion in limine to preclude all pre-tasing information, including defendants' trial exhibit B (the event chronology).

### B. *"Unnecessary" Witnesses*

Plaintiff moves to preclude certain "unnecessary witnesses" that defendants intend to call, who may present cumulative evidence regarding the events and circumstances leading to plaintiff's arrest.  (Pl. Mem. at 9-12.) Specifically, plaintiff seeks to preclude defendants from calling defendant Officers Fernando Caches, Argely Delacruz, and Franciscon Allende, as well as plaintiff's neighbor Christina Cosares.  (Pl. Mem. at 9-12.)  Relying on Rule 403, plaintiff argues that certain officers should be precluded because they did not relay any information to defendant Brander, were outside the plaintiff's home at the time of the use of force, and would unnecessarily waste the time of the court.  (*Id.* at 9-11.)  In response, defendants counter that testimony from certain officers are relevant in assessing plaintiff's credibility and

---

[1]     The court agrees, however, that certain information not including the pre-tasing information, such as plaintiff's current relationship status with Brielle Scoma is irrelevant and shall be excluded at trial.

also the reasonableness of force used by the defendants. (Def. Opp. at 9-13.) Defendants also agree, however, that should plaintiffs dismiss certain defendants, those defendants' testimony may be unnecessary. (*Id.*)

As an initial matter, plaintiff has agreed to dismiss with prejudice his claims against defendants Officers Azeem Chatha, Fernando Caches, Damir Vukic, Argely Delacruz, Francisco Allende, Spencer Craven, and Gregory Mannino pursuant to Federal Rule of Civil Procedure 41(a)(2). (*See* ECF No. 127.) As discussed above, *see supra* Discussion I, because plaintiff agreed to dismiss these defendants with prejudice, the court agrees that defendants should carefully consider whether any testimony from the dismissed officers is necessary or cumulative to defendants' theory of the case and not unfairly prejudicial to plaintiff. To the extent possible, the parties are encouraged to stipulate to any facts derived from or relating to the dismissed defendant officers.

With respect to plaintiff's remaining objections to testimony from Officers Fernando Caches, Argely Delacruz, and Francisco Allende, the court denies plaintiff's motion to preclude these officers *in toto*. Rule 403 permits the exclusion of relevant evidence, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403.

"[E]vidence that bears on the objective reasonableness of the
officers' conduct is relevant to the excessive force claim."
*Jean-Laurent*, 840 F. Supp. 2d at 537.

Here, the evidence that plaintiff seeks to preclude is
directly relevant to the issue of whether defendants acted
reasonably, and excluding it would unduly prejudice defendants'
ability to defend against plaintiff's excessive force claim.
Although introduction of the evidence may undermine plaintiff's
claim, nothing in the record supports plaintiff's argument that
such evidence amounts to "unfair prejudice" within the meaning
of Rule 403. *See* Fed. R. Evid. 403; *see also United States v.
Diaz*, 878 F.2d 608, 615 (2d Cir. 1989) ("Unfair prejudice within
[Rule 403's] context means an undue tendency to suggest decision
on an improper basis, commonly, though not necessarily, an
emotional one. . . . The logical inferences resulting from
proffered evidence do not engender the unfair prejudice against
which Rule 403 is directed." (cleaned up)).

Plaintiff seeks to preclude Officer Caches's testimony
because Officer Caches testified to not having relayed any
information to defendant Brander. (Pl. Mem. at 9-10.)
Nevertheless, as discussed above, the jury cannot assess the
reasonableness of defendant Brander's response after the tasing
without some preliminary knowledge about the events and
circumstances leading to plaintiff's arrest and the use of

force.  Thus, the officers' interactions with Ms. Cosares and Ms. Scoma before defendant Brander arrived were ultimately relayed to defendant Brander -- even if not directly by Officer Caches -- when defendant Brander was informed by an officer that a "male [was] inside the place had choked and assaulted a female who was outside and that he was refusing to be arrested and wouldn't come out of the house." (Pl. Mem. at 5 (citing Brander Dep. 34:2-35:16).)  Plaintiff's statements made to Officer Caches in the ambulance, including plaintiff's alleged reference to a potential lawsuit, are relevant to plaintiff's frame of mind and his ongoing resistance to arrest.  The admissibility of plaintiff's other lawsuits is discussed *infra* Discussion II.C.

Similarly, the court declines to preclude testimony by Officer Delacruz, who was outside the plaintiff's home with plaintiff's wife, because, as noted above, the officers' impressions of the pre-tasing information was necessarily relevant to analyzing whether defendant Brander's actions were unconstitutional.  Plaintiff argues that because Officer Delacruz was outside the home at the time the excessive force was used, Delacruz can offer no relevant testimony regarding the use of force.  (Pl. Mem. at 10.)  Moreover, plaintiff seeks to preclude any interactions or conversations Officer Delacruz had with Ms. Scoma or Ms. Cosares.  (*Id.* at 11.)  As noted above, however, the substance of the conversations with Ms. Scoma or

Ms. Cosares were ultimately relayed to defendant Brander through another officer and therefore are relevant to the jury's analysis of plaintiff's arrest, his perceived resistance to arrest, and the officers' use of force, and will not be excluded. *See United States v. Herron*, 18 F. Supp. 3d 214, 228 (E.D.N.Y. 2014) ("The collective knowledge doctrine allows for the imputation of knowledge between officers when one officer, having acquired probable cause, instructs another officer to conduct a search or arrest, even if the latter is far less informed."); *United States v. Babilonia*, 854 F.3d 163, 178 (2d Cir. 2017).

Finally, the court declines to preclude Officer Allende's testimony because, even though Officer Allende testified to not seeing plaintiff being handcuffed, Officer Allende's actions in firing the taser are relevant to the jury's determination of whether defendant Brander thereafter used excessive force in applying the handcuffs. In other words, Officer Allende's testimony regarding the deployment of the taser and the circumstances surrounding the incident are relevant information that a jury should consider when assessing the reasonableness of defendant Brander's use of force in restraining plaintiff. Plaintiff's alleged statement to Officer Allende that plaintiff was "not going back to jail" is relevant to plaintiff's state of mind and motive in what the officers

perceived as plaintiff's refusal to comply with their orders to submit to handcuffs after he was advised that he was under arrest. The admission of plaintiff's criminal history is discussed below. *See infra* Discussion II.F. For these reasons, the court denies plaintiff's motion to preclude testimony from Officers Caches, Delacruz, and Allende *in toto* and further declines to preliminarily limit the contents of the officers' testimony regarding the pre-tasing information. Nonetheless, the court agrees with plaintiff that defendants should not present testimony or evidence that is unnecessarily cumulative when describing the pre-tasing events.

### C. *Plaintiff's Prior Lawsuits and Related Exhibits*

Plaintiff requests that "any evidence or testimony regarding unrelated personal injury lawsuits brought by plaintiff" be precluded from trial under Rule 402 or 403 because any relevance is outweighed by significant risk of prejudice, and the "only import" would be to demonstrate that plaintiff is a "chronic litigant" or a criminal. (Pl. Mem. at 12-14.)

Defendants counter that plaintiff's prior lawsuits are relevant in showing plaintiff's "motive, plan and scheme" in orchestrating a lawsuit against defendants for financial gain. (Def. Opp. at 13.) Specifically, defendants identify two cases filed by plaintiff in 2002 and 2013 respectively, where plaintiff sought monetary relief for personal injuries: (1)

*Scoma v. United States*, No. 02-cv-2970 (JG) (E.D.N.Y. 2002), and (2) *John Scoma v. Man-Dell Food Stores, Inc.*, 3250/2013 (Kings Cty. Sup. Ct.). Defendants assert that these two lawsuits are "sufficiently similar to demonstrate a pattern, plan and scheme by which plaintiff would intentionally place himself at risk of relatively minor injuries" to "seek financial gain through litigation." (Def. Opp. at 16-17.)

Rule 404(b)(1) prohibits the admission of evidence of "a crime, wrong, or other act" to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Rule 404(b)(2), however, provides that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The Second Circuit has explained that "[l]itigiousness is the sort of character trait with which Rule 404(b) is concerned." *Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988) ("[A] plaintiff's litigiousness may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against the chronic litigant."); *see also Raysor v. Port Authority of New York and New Jersey*, 768 F.2d 34, 40 (2d Cir. 1985). In similar circumstances, courts have

generally precluded evidence of prior lawsuits to show the plaintiff's litigiousness unless there was evidence that the prior lawsuits were fraudulently filed. *See Outley*, 837 F.2d at 594 (excluding evidence of prior lawsuits but noting a distinction "where a party has filed a series of fraudulent lawsuits and there is substantial evidence that the prior lawsuits amounted to a fraudulent pattern"); *Walker v. Schult*, 365 F. Supp. 3d 266, 281 (N.D.N.Y. 2019) (excluding evidence of prior grievances where defendants failed to show "other grievances were fraudulent"); *Elhannon LLC v. F.A. Bartlett Tree Expert Co.*, No. 14-cv-262, 2018 WL 6040687, at *3 (D. Vt. Nov. 19, 2018) (excluding evidence of prior lawsuits into evidence where the risk of prejudice was high and defendant failed to show the prior suits were fraudulent).

Here, the court agrees with plaintiff that defendants have failed to show that plaintiff's prior lawsuit against the United States was fraudulently filed or relevant to this instant case. In *Scoma v. United States*, No. 02-cv-2970 (JG) (E.D.N.Y.), plaintiff sought damages for a leg injury he allegedly sustained while playing basketball on the recreation deck of the Metropolitan Detention Center ("MDC") in Brooklyn, New York. This court granted summary judgment to the United States and dismissed the case after concluding that plaintiff assumed the risk of injury by engaging in athletic activity.

*See Scoma*, 2004 WL 40511, at *3-4 (E.D.N.Y. Jan. 7, 2004).

Although this prior action involved a personal injury, the factual circumstances are sufficiently distinct from the instant case that introducing this prior action may lead to jury confusion or unfair prejudice against defendant as a chronic litigant or criminal. Further, although the court granted summary judgment in favor of the government, the court did not conclude that plaintiff's lawsuit was fraudulent. *See Scoma*, 2004 WL 40511, at *3-4. Moreover, even if the court agreed with defendants that plaintiff's prior lawsuit may show some motive or intent, the "slight probative value" is "outweighed by the substantial danger of jury bias against the chronic litigant." *Outley*, 837 F.2d at 592; *Marcic v. Reinauer Transp. Companies*, 397 F.3d 120, 125 (2d Cir. 2005) ("A trial court has a duty to prevent charges of litigiousness if they are likely to result in undue prejudice that is not substantially outweighed by their probative value."); *see, e.g.*, *Ragin v. Newburgh Enlarged City Sch. Dist.*, No. 10-cv-2797 (JFK), 2011 WL 2183175, at *2 (S.D.N.Y. June 3, 2011) ("The introduction of evidence concerning [plaintiff's] past litigation would distract the jury from the central issues in the trial and may well lead to prejudice against [plaintiff] as a frequent litigant. We would be getting too close to propensity evidence."). Accordingly, "if defendants can prove that plaintiff has made similar claims

23

that were found to be fraudulent, they may cross-examine [plaintiff] concerning these litigations in order to impeach his credibility at trial." *Young v. Calhoun*, No. 85-cv-7584 (SWK), 1995 WL 169020, at *6 (S.D.N.Y. Apr. 10, 1995). Because the court cannot conclude that plaintiff's prior lawsuit against the United States was fraudulent, however, and due to the risk of unfair prejudice against plaintiff, the court grants plaintiff's motion in limine to preclude admission of evidence regarding *Scoma v. United States*, No. 02-cv-2970 (JG) (E.D.N.Y. 2002) at the present time.

Next, plaintiff also seeks to preclude any evidence involving plaintiff's personal injury lawsuit filed February 13, 2013 against a grocery store. In *John Scoma v. Man-Dell Food Stores, Inc.*, 3250/2013 (Kings Cty. Sup. Ct.) (the "Key Foods lawsuit"), plaintiff brought suit after he tripped over an obstacle that was allegedly placed on the floor by a Key Foods Supermarket employee. (*See* ECF No. 101-6, Scheiner Declaration, Ex. E, Complaint at 2.) Notably, in the Key Foods lawsuit, plaintiff alleged that he sustained:

> [S]erious, severe and permanent injuries, including, among others, injury to the left elbow; . . . torn tendons of the left elbow; subluxation of the ulnar nerve in the left elbow; suffered transposition flexor damage to the left elbow; suffered nerve damage to the left elbow . . . suffered damage to the u1nar nerve of the left elbow; was forced to undergo debridement of the flexor tendon of the left

> elbow; suffered loss of range of motion in the
> left elbow and arm; suffered scarring of the
> left elbow; was forced to undergo painful and
> extensive physical therapy; suffered
> derangement of the left elbow; suffered torn
> ligaments in the left elbow.

*Id.* at 4. Thus, plaintiff alleged that the injuries he sustained in the Key Foods lawsuit were inflicted on the same location of his body that is the focus of his injury in this case -- his left elbow. *See Scoma*, 2021 WL 230295, at *4 ("An x-ray was taken of plaintiff's left elbow and he was diagnosed with a fracture to his 'coronoid process proximal ulna' and a 'suspected fracture' to his proximal radial head."). Moreover, it is undisputed that due to injuries related to his Key Foods lawsuit, plaintiff underwent two surgeries to repair his left elbow in 2011 and again in 2015, just before the arrest at issue in the instant action. (*See* ECF No. 80-6, Scoma Deposition at 90:16-92:7.)

Accordingly, unlike plaintiff's other federal lawsuit regarding a leg injury sustained while playing basketball, the Key Foods lawsuit is directly relevant and admissible because the injuries and potential damages overlap in both cases. The court agrees with defendants that the jury should be entitled to consider that plaintiff allegedly suffered an injury to his left elbow from a prior incident and sought compensation for that injury. Indeed, at his deposition, plaintiff described the pain

he suffered while being handcuffed "[b]ecause [he] was just recovering from a second surgery" to repair his elbow following the Key Foods incident.  (Scoma Dep. at 69:20-25); *Brewer v. Jones*, 222 F. App'x 69, 70 (2d Cir. 2007) (summary order) ("[E]vidence relevant to show a possible cause of [a plaintiff's] injury unrelated to the acts of the defendant," may be admissible.)

Thus, the probative value of evidence from the Key Foods lawsuit is not substantially outweighed by the risk of unfair prejudice to plaintiff.  Moreover, the court concludes that defendants shall also be permitted to introduce evidence of testimony provided in the Key Foods lawsuit for impeachment purposes.  *See Jean-Laurent*, 840 F. Supp. 2d at 543 ("To the extent that plaintiff testifies at trial that he suffered emotional damages as a result of the June 11, 2002 strip search, defendants may introduce limited deposition testimony given by plaintiff in [a previous lawsuit] as a prior inconsistent statement as to causation under Federal Rule of Evidence 801(d)(1)(A).").  In addition, the plaintiff's deposition testimony offered by defendants is admissible as a party admission under Federal Rule of Evidence 801(d)(2)(A).

Accordingly, for the reasons set forth above, the court grants in part and denies in part plaintiff's motion in limine to preclude the prior lawsuits.  Defendants are precluded

from referring to or offering evidence regarding *Scoma v. United States*, No. 02-cv-2970 (JG) (E.D.N.Y.), but may refer to relevant evidence and testimony regarding plaintiff's Key Foods lawsuit.

### D. Plaintiff's Medical History

Plaintiff also moves to preclude the introduction of testimony any medical evidence that are unrelated to plaintiff's left elbow. (Pl. Mem. at 14-15.) Defendants concede that, assuming plaintiff's claimed damages are limited to his left elbow, evidence unrelated to plaintiff's left elbow is not relevant and will not be introduced. (Def. Opp. at 19.) To the extent plaintiff's damages are limited to his left elbow, the court agrees that unrelated medical evidence is not relevant or admissible, unless the claimed damages may be related to other medical conditions.

### E. Plaintiff's Facebook Photo, Workout Regimen, and Medical Steroid Use

Plaintiff moves to preclude the introduction of defendants' trial Exhibit A, which is a photo of plaintiff from Facebook, (*see* ECF No. 118, Defendants' Exhibit List, Ex. A (the "Facebook photo")). Plaintiff also seeks to preclude defendants "from eliciting testimony regarding plaintiff's workout regimen or medically prescribed steroids." (Pl. Mem. at 15-16.) Plaintiff argues that such evidence would only serve as a

distraction from plaintiff's excessive force claim. (*Id.*) Defendants counter that such evidence is relevant and admissible because plaintiff authenticated the Facebook photo at his deposition and his workout regimen and medical steroid use are relevant to his strength at the time of his incident and the degree of his injuries. (Def. Opp. at 20-21.)

As an initial matter, the court agrees that the plaintiff's Facebook photo is relevant and admissible because it shows the plaintiff's physique at the time of the incident and was authenticated by plaintiff during his deposition. In relevant part, plaintiff confirmed the authenticity of the Facebook photo when it was presented at his deposition:

> Q:   [T]hese are photographs I downloaded from your Facebook page. And I just wanted to ask you . . . whether you think that that photograph depicts you, on the way that you would have appeared to the officers who were in the house during the incident
>
> Q:   In other words, your physical shape; is that the physique that you had on the date of September 19th
>
> A:   Approximately, yes.

(ECF No. 80-6, Scoma Deposition, 103:21-104:7.) Thus, as conceded by plaintiff, the Facebook photo shows his approximate physique on September 19, 2015. Accordingly, the photograph has probative value because it is relevant to a reasonable officer's perspective when confronted with the circumstances at the time

of plaintiff's arrest, *see Graham*, 490 U.S. at 397, and is not substantially outweighed by unfair prejudice to the plaintiff. For these reasons, plaintiff's motion to preclude the Facebook photo is denied.

With respect to plaintiff's workout regimen and medical steroid use at the time of his arrest, the court concludes that such evidence has some probative value for the reasons explained below. Specifically, the court finds that in analyzing the *Graham* factors, the Facebook photo will provide the jury the opportunity to assess how a reasonable officer might perceive and respond to the circumstances present on September 19, 2015 -- specifically, how a reasonable officer would evaluate the force necessary to effect an arrest of an individual perceived to be of "large and muscular physical stature," who refuses to comply with the officers' orders. *Scoma*, 2021 WL 230295, at *8.

Whether to permit the jury to also consider plaintiff's workout regimen and medical steroid use -- information unknown to the officers at the scene of the incident -- raises considerations of a risk of unfair prejudice to plaintiff. *See* Fed. R. Evid. 403. To be sure, defendants represent that they intend to use the workout and steroid evidence to show plaintiff's "strength at the time of the incident" and "his belligerence and aggressiveness when

confronting the police." (Def. Opp. at 21.) The court finds that plaintiff's Facebook photo will permit the jury to understand the officers' assessment of plaintiff's strength. Relevant testimony from the officers and plaintiff will permit the jury to make any necessary credibility determinations regarding plaintiff's demeanor.

The plaintiff's workout regimen at the time of the incident undergirding this case is precluded because officers were unaware of it. Evidence of plaintiff's workout regimen and work as a personal trainer after he was arrested is relevant to the magnitude of his injuries and damages. Evidence of plaintiff's use of steroids, a fact also unknown to the officers at the time of his arrest, is relevant and admissible if: (1) the medical records establish that plaintiff was taking steroids; and (2) a treating or expert medical source testifies to the effect of steroids on muscle mass and demeanor.[2] Evidence of steroid use is relevant to the parties' testimony about plaintiff's appearance and conduct on the date of his arrest. For these reasons, the court grants in part and denies in part plaintiff's motion in limine, and rules that the Facebook photo

---

[2] The court respectfully disagrees with defendants' contention that a jury would necessarily understand, without fact or expert medical testimony, that steroid use enhances muscle mass and increases irritability and anger in some users. The court agrees that it would be unfairly prejudicial to permit defendants to present evidence of steroid use to the jury without fact or expert medical testimony explaining the contents and meaning of plaintiff's medical records and the effects of steroids on persons with low testosterone.

is admissible, plaintiff's workout regimen at the time of his arrest is not admissible, his workout regimen after his arrest is admissible as to damages, and plaintiff's medical steroid use is conditionally admissible.

### F. Plaintiff's Criminal History

Plaintiff also seeks to preclude evidence or testimony relating to plaintiff's arrest and conviction history. (Pl. Mem. at 16-19.) Plaintiff argues that such evidence, including plaintiff's New York State Division of Criminal Justice Services Rap Sheet ("rap sheet") (*see* ECF No. 118, Defendants' Exhibit List, Ex. D), is irrelevant, not admissible, and constitutes improper character evidence under Rule 404. (*Id.*) Moreover, plaintiff seeks to preclude defendants from introducing testimony that plaintiff was discharged from the United States Marine Corps in 1989 with a less than honorable discharge. (*Id.* at 18-19.)

In response, defendants represent that they do not intend to elicit any evidence regarding plaintiff's military discharge or any arrests that did not lead to conviction, other than the arrest in this case to the extent that it is relevant to the use of force. (Def. Opp. at 22.) Nonetheless, defendants argue that plaintiff's October 20, 2000 racketeering conviction should be admitted because the conduct is "highly

relevant to the plaintiff's veracity" and not unfairly prejudicial. (*Id.* at 23-24.)

As defendants represent that they do not intend to introduce evidence of plaintiff's prior arrests, convictions, and discharge from the military, the court grants plaintiff's motion in limine to preclude the rap sheet and any evidence or testimony related to plaintiff's criminal history as described above. The court further grants plaintiff's motion to preclude his racketeering conviction for the following reasons.

On or about October 10, 2000, plaintiff was convicted, upon a guilty plea, of one count of racketeering in violation of 18 U.S.C. § 1962(c), and sentenced to 15 months' imprisonment. *See Scoma v. United States*, No. 02-cv-2970 (JG), 2004 WL 40511, at *2, 15 n.1 (E.D.N.Y. Jan. 7, 2004). At his deposition, plaintiff testified that the substance of this crime was two bank burglaries, allegedly occurring in the context of organized crime. (*See* ECF No. 101-9, Scoma Deposition, 119:1-122:15.) Because plaintiff's October 20, 2000 racketeering conviction occurred more than ten years ago, Rule 609(b) applies.

Under Rule 609(b), a felony conviction that is more than ten years old is admissible only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). In such circumstances, "[e]vidence of the conviction is admissible

only if: (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." *Id.* When balancing the probative value of a conviction against its prejudicial effect, courts will examine four factors: "(1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Daniels v. Loizzo*, 986 F. Supp. 245, 450 (S.D.N.Y. 1997) (citing 4 Weinstein's Fed. Evid. § 609.04[2][a], at 609-20 (1997); *United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1997)). In reviewing the admission of convictions under Rule 609(b), the Second Circuit requires "the district judge [to] make an on-the-record finding based on specific facts and circumstances that the probative value of the evidence substantially outweighs the danger of unfair prejudice." *Jones v. New York City Health & Hosps. Corp.*, 102 F. App'x 223, 226 (2d Cir. 2004) (summary order) (citing *United States v. Mahler*, 579 F.2d 730, 734 (2d Cir. 1978)).

Having reviewed the record, the court does not find that the probative value of plaintiff's racketeering conviction "substantially outweighs" the prejudicial effect of admitting

such stale conviction. *See* Fed. R. Evid. 609(b). The Second Circuit has recognized that Congress intended that convictions more than ten years old be admitted 'very rarely and only in exceptional circumstances.'" *Daniels*, 985 F.Supp. at 252 (quoting *Zinman v. Black & Decker, Inc.*, 983 F.2d 431, 434 (2d Cir.1993)). No such "exceptional circumstances" are present here to justify the admission of plaintiff's 2000 racketeering conviction over twenty years ago. *See, e.g.*, *Dougherty v. Cty. of Suffolk*, No. 13-cv-6493 (AKT), 2018 WL 1902336, at *3 (E.D.N.Y. Apr. 20, 2018) (concluding that plaintiff's felony burglary conviction did not present "exceptional circumstances" warranting its admission); *Maize v. Nassau Health Care Corp.*, No. 05—cv-4920 ETB, 2012 WL 139261, at *4 (E.D.N.Y. Jan. 18, 2012) (same). For these reasons, the court grants plaintiff's motion in limine to preclude evidence and testimony relating to plaintiff's criminal history, prior arrests, and military discharge. If plaintiff opens the door to this evidence, for example by denying his criminal conviction or mentioning his military service, defendants may impeach plaintiff with evidence of his criminal convictions and dishonorable discharge.

### G. *Pleadings and Discovery Responses*

Plaintiff next moves to preclude defendants from introducing the pleadings and discovery responses in this case as potentially prejudicial. (Pl. Mem. at 19 (citing to

defendants' exhibits W, X, Y, Z, and BB).)  Defendants respond
that they do not intend to introduce "these documents in toto,
or for any purpose other than as needed to impeach plaintiff if
necessary."  Defendants further note that certain pleadings and
responses are sworn statements and are considered judicial
admissions against a party and are further admissible as prior
statements of a party.  (Def. Opp. at 24-25.)

Although plaintiff's complaints are not sworn
documents, the court agrees with defendants that plaintiff's
pleadings are admissible for impeachment purposes and as party
admissions, and are excepted from the definition of hearsay.
*See Official Comm. of Unsecured Creditors of Color Tile, Inc. v.
Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)
("[A]llegations in the Second Amended Complaint are 'judicial
admission[s]' by which [plaintiff] was 'bound throughout the
course of the proceeding.'" (quoting *Bellefonte Re Ins. Co. v.
Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985))).
"Plaintiff's verified discovery responses are also admissions
and thus admissible." *Bermudez v. City of New York*, No. 15-cv-
3240 (KAM)(RLM), 2019 WL 136633, at *16 (E.D.N.Y. Jan. 8, 2019).
Accordingly, plaintiff's motion to preclude his pleadings and
discovery responses is denied and the court will allow
defendants to use such evidence as admissions and for
impeachment purposes.

## III. Defendants' Motions in Limine

### A. *Defendants' Disciplinary History and Prior Lawsuits*

Defendants move under Rule 404(b) to preclude plaintiff from inquiring about defendants' disciplinary histories and any other civil rights actions brought against defendants. (Def. Mem. at 8-11.) Defendants did not cite to any specific disciplinary history or prior lawsuits and instead made this motion "in an abundance of caution should plaintiff attempt to elicit such matters." (*Id.* at 9 n.1.) In response, plaintiff represents that he "does not intend to introduce any such evidence" regarding the prior lawsuits or disciplinary history. (*See* Pl. Opp. at 1 n.1.) Based on the foregoing, the court denies as moot defendants' motion to preclude any disciplinary history or prior lawsuits.

### B. *Specific Damages Award*

Next, defendants move to preclude plaintiff from suggesting a specific dollar amount to the jury with respect to damages during the opening statement, witness testimony, and summation. (Def. Mem. at 11-12.) Plaintiff opposes this motion, requesting that the court permit him to request the jury award a specific dollar amount "as a matter of trial strategy." (Pl. Opp. at 4.)

As plaintiff correctly notes, the determination of whether to allow a plaintiff to request a specific damages

amount from the jury is within the court's discretion. *See*
*Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir.
1997). Although the Second Circuit has stated in the context of
monetary awards for pain and suffering that "specifying target
amounts for the jury to award is disfavored," *Consorti v.*
*Armstrong World Industries, Inc.*, 72 F.3d 1003, 1016 (2d Cir.
1995), *vacated on other grounds*, 518 U.S. 1031 (1996), the
Second Circuit has also stated that "it is best left to the
discretion of the trial judge, who may either prohibit counsel
from mentioning specific figures or impose reasonable
limitations, including cautionary jury instructions."
*Lightfoot*, 110 F.3d at 912 (The court may, in its discretion,
"either prohibit counsel from mentioning specific figures or
impose reasonable limitations, including cautionary jury
instructions.")

In light of the Second Circuit's guidance, the court
will not permit plaintiff to submit to the jury a specific
dollar amount regarding his non-economic damages, including pain
and suffering, in either his opening statement, witness
testimony, or closing argument. *See, e.g.*, *Equal Emp.*
*Opportunity Comm'n v. United Health Programs of Am., Inc.*, No.
14-CV-3673 (KAM)(JO), 2017 WL 10088567, at *13 (E.D.N.Y. Sept.
4, 2017) (precluding plaintiffs from suggesting or requesting at
trial a specific dollar amount regarding their noneconomic

damages); *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 558
(E.D.N.Y. 2011) (precluding plaintiff's counsel from submitting
a specific dollar amount regarding damages for pain and
suffering, but permitting plaintiff's counsel to submit a dollar
amount regarding other compensable damages if supported with
admissible evidence during case in chief).

Plaintiff will be permitted, however, to submit to the
jury during his closing argument a specific dollar amount
regarding other compensable damages he alleges to have suffered
as a result of the defendants' actions, so long as any figure
submitted to the jury is supported by the trial evidence
admitted during plaintiff's case in chief and defendants have an
opportunity to respond if they choose to do so. *See Greenburger
v. Roundtree*, No. 17-cv-03295 (PGG)(SLC), 2020 WL 6561598, at *3
(S.D.N.Y. Jan. 16, 2020) ("A plaintiff bears the burden of
establishing its entitlement to recovery and thus must
substantiate its claim with evidence to prove the extent of
damages." (cleaned up)), *report and recommendation adopted*, 2020
WL 4746460 (S.D.N.Y. Aug. 16, 2020).  The court will instruct
the jury that statements by lawyers are not evidence or the law
that they are to follow when they begin their deliberations.
For the foregoing reasons, defendants' motion in limine to
preclude plaintiff from suggesting a specific dollar amount to
the jury is granted in part and denied in part.

### C. Jury Instructions Regarding Punitive Damages

Defendants seek to preclude the court from charging the jury with an instruction concerning punitive damages. (Def. Mem. at 12.) Defendants assert that punitive damages are inappropriate because "there is no evidence of evil intentions, or reckless or callous indifference" by defendants. (*Id.*) Plaintiff argues that a punitive damages award is warranted in this case and that it should be left to the jury to decide whether defendant Brander's use of force warrants punitive damages. (Pl. Opp. at 5-6.)

"Punitive damages are available in an action under [section] 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Haskins v. Jackson*, No. 15-cv-2016 (MKB), 2020 WL 6705640, at *17 (E.D.N.Y. Nov. 10, 2020) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). A jury may appropriately award punitive damages where the "character of the tortfeasor's conduct . . . is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards." *Wade*, 461 U.S. at 54. A plaintiff must show a "positive element of conscious wrongdoing" by the defendant. *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 121 (2d Cir. 2006) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526,

538 (1999)). "Generally, the issue of whether defendants' conduct is sufficiently serious to warrant punitive damages is a question best left to the jury." *Lozada v. Weilminster*, 92 F. Supp. 3d 76, 108 (E.D.N.Y. 2015). Nonetheless, "[i]t is a question of law for the Court, not the jury, to decide whether a plaintiff has established that punitive damages are available." *Fairman v. Hurley*, 373 F. Supp. 2d 227, 234 (W.D.N.Y. 2005) (citing 15 Moore's Federal Practice § 102.106[4]); *Frittita v. Fanny's Supper Club*, No. 98-cv-781S, 2000 WL 35905867, at *9 (W.D.N.Y. Aug. 8, 2000) ("questions on what evidence should be admitted into or excluded from evidence, what [] evidence is relevant to the issue of punitive damages, . . . are questions of law, not questions of fact for the jury").

District courts in this circuit have "allow[ed] the jury to decide issues of liability and compensatory damages first, and then present instructions regarding punitive damages, if applicable." *Villar v. City of New York*, No. 09-cv-7400 (DAB), 2017 WL 4512507, at *6 (S.D.N.Y. Sept. 25, 2017); *see also Hannah v. Wal-Mart Stores, Inc.*, No. 12-cv-01361 (VAB), 2017 WL 690179, at *4 (D. Conn. Feb. 21, 2017), *aff'd sub nom.*, 803 F. App'x 417 (2d Cir. 2020). As defendants' argument focuses on the "insufficiency of evidence in support of Plaintiffs' claim for punitive damages," this court concludes that it is inappropriate to make this determination before the

court has the opportunity to evaluate the trial evidence. *See Hannah*, 2017 WL 690179, at *4. Thus, the court will reserve the issue of whether to charge punitive damages until the parties have rested. Until that point, plaintiff's counsel is to refrain from mentioning punitive damages to the jury. Accordingly, defendants' motion to preclude the court from charging the jury with an instruction concerning punitive damages is denied without prejudice to renewal.

### D. Plaintiff's Medical Records

Defendants also object to plaintiff's introduction of medical records that are not authenticated, contain inadmissible hearsay or irrelevant matter, and are not sufficiently explained by a competent witness to make them intelligible to the jury. (Def. Mem. at 13-14.) Plaintiff contends that he may introduce certified medical records without a custodian or medical witness pursuant to Rule 803(6). (Pl. Opp. at 6-7.)

Two exceptions under the Federal Rules of Evidence are relevant when considering the introduction of medical records: the exception for medical records, as expressed in Rule 803(4); and the exception for records kept in the normal course of business, as expressed in Rule 803(6). Generally, medical records "can be admissible under [Rule] 803(6), provided they are prepared in the regular course of business, near the time of occurrence, by a person with knowledge and are properly

authenticated . . . Properly authenticated [s]tatement[s] that .
. . [are] made for—and [are] reasonably pertinent to—medical
diagnosis or treatment; and . . . describe [ ] medical history;
past or present symptoms or sensations; their inception; or
their general cause are also admissible under [Rule] 803(4)."
*Norcia v. Dieber's Castle Tavern, Ltd.*, 980 F. Supp. 2d 492, 501
(S.D.N.Y. 2013) (internal citations and quotation marks
omitted).  Rule 803(4) permits introduction of a statement,
otherwise hearsay, that "(A) is made for—and is reasonably
pertinent to—medical diagnosis or treatment; and (B) describes
medical history; past or present symptoms or sensations; their
inception; or their general cause."  Fed. R. Evid. 803(4).

        To admit medical records under Rules 803(4) or 803(6),
however, "the introducing party must lay a foundation to
introduce hearsay evidence."  *Djangmah v. Falcione*, No. 08-cv-
4027 (KPF), 2013 WL 6388364, at *6 (S.D.N.Y. Dec. 5, 2013)
(internal citations and quotation marks omitted).  In addition,
"Rule 803(6) explicitly requires that this foundation be laid by
a 'custodian' or 'qualified witness,' if testimonial, or by a
formal certification by the record's custodian."  *Id.*; *see also*
*Perpall v. Pavetek Corp.*, No. 12-cv-0336 (PKC), 2017 WL 1155764,
at *8 (E.D.N.Y. Mar. 27, 2017) ("Courts in this Circuit have
generally held that medical records are admissible under the

business record exception to the hearsay rule, provided that they satisfy the requirements of FRE 803(6).").

　　　　With these principles in mind, the court finds that plaintiff's medical records will be admissible at trial, if he lays the proper foundation for such evidence. "As with Rule 803(4), the introducing party must lay a foundation to introduce hearsay evidence under Rule 803(6); unlike Rule 803(4), however, Rule 803(6) explicitly requires that this foundation be laid by a 'custodian' or 'qualified witness,' if testimonial, or by a formal certification by the record's custodian." *Duchnowskl v. Cty. of Nassau*, 416 F. Supp. 3d 179, 182-83 (E.D.N.Y. 2018); *see, e.g.*, *Gissinger v. Yung*, Nos. 04-cv-0534, 04-cv-5406, 2007 WL 2228153, at *4 (E.D.N.Y. July 31, 2007) (holding that "[i]f properly authenticated and created in the regular course of business contemporaneously with the occurrence by a person with knowledge, medical records can be admissible as business records", and finding submission of affidavit from doctor who created the medical records was proper authentication) (citing *Hodges v. Keane*, 886 F. Supp. 352, 356 (S.D.N.Y. 1995)). Thus, the court agrees with defendants that plaintiff must properly lay a foundation under Rule 803(4) or 803(6) to introduce the plaintiff's certified medical evidence. At the time plaintiff introduces such medical evidence, defendants may object on the ground, *inter alia*, that the voluminous nature of the records is

lacking proper foundation or likely to confuse or mislead the jury to such an extent that its probative value is substantially outweighed, pursuant to Rule 403.[3]  Fed. R. Evid. 403. Accordingly, defendants' motion to preclude plaintiff's medical records is denied without prejudice to renewal at trial.

### E. References to the City, the City Attorneys, and Indemnification

Defendants also seek to preclude any evidence or references relating to the employment or indemnification of the defendant officers by New York City, including references to defense counsel as "City Attorneys."  (Def. Mem. at 14-16.) Specifically, defendants seek to redact any Bates numbers on exhibits referring to the City, alter the caption of the case to exclude the City, and also request that any references to the City's counsel be referred to at trial as "defense counsel." (*Id.*)  Plaintiff represents that he "does not intend to offer evidence or argument regarding indemnification," but opposes defendants request to redact any Bates numbers, alter the caption, or refer to the City's counsel as "defense counsel." (Pl. Opp. at 7-9.)

---

[3]     Defendants contest the admission of plaintiff's trial exhibit 5 "Helping Hands Therapy Center Records," as lacking a proper foundation under Rule 901 and hearsay under Rule 802.  (Def. Mem. at 14.)  Plaintiff contends that he has requested a certified set of records and anticipates receiving such records imminently.  (Pl. Opp. at 7.)  Accordingly, in light of the discussion above, the court sustains defendants' objection but will permit plaintiff the opportunity to authenticate exhibit 5 at the Final Pretrial Conference.

Here, the court agrees that evidence regarding indemnification would be prejudicial against defendants because such evidence might "encourage a jury to inflate its damages award because it knows the government -- not the individual defendants -- is footing the bill." *Othman v. Benson*, No. 13-cv-V4771 (NGG)(SJB), 2019 WL 1118035, at *4 (E.D.N.Y. Mar. 11, 2019) (quoting *Williams v. McCarthy*, No. 05-cv-10230 (SAS), 2007 WL 3125314, at *7 n.46 (S.D.N.Y. Oct. 25, 2007)); *Hernandez v. Kelly*, No. 09-cv-1576 (TLM), 2011 WL 2117611, at *6 (E.D.N.Y. May 27, 2011) (finding that evidence regarding the City's potential indemnification of defendant police officers would be prejudicial against the defendants); *Davis v. City of New York*, 296 F.R.D. 127, 130 (E.D.N.Y. 2013) ("No reference to defense counsel as 'the City' or suggestion that the City may indemnify Defendants shall be made."). Accordingly, the court grants defendants' motion in limine and prohibits any references or evidence relating to the potential indemnification of the defendant officers, including but not limited to references to defense counsel as "City" or "Corporation" counsel.

Next, the court must consider whether references to the City shall be permitted during the trial and on Bates stamps on relevant exhibits and the case caption. Although the court recognizes that some district courts have permitted references to the City and counsel as "City attorneys," where, as here, the

City remains a defendant, *see Adams v. City of New York*, 993 F. Supp. 2d 306, 329 (E.D.N.Y. 2014), *Joseph v. Deluna*, No. 15-cv-5602 (KMW), 2018 WL 5095668, at *3 (S.D.N.Y. Oct. 19, 2018), the court agrees with defendants that any references to the City may unnecessarily confuse the jury or lead the jury to believe that the defendant officers may be indemnified by the City.  Indeed, "[w]hile the City has been involved in this litigation, that fact is irrelevant to the determination of liability and damages, which should be based solely on the facts and the law." *Est. of Jaquez v. Flores*, No. 10-cv-2881 (KBF), 2016 WL 1060841, at *2 (S.D.N.Y. Mar. 17, 2016).  Accordingly, the court concludes that any references to defense counsel's employment by the City shall be precluded.  Moreover, the court agrees that "[a] reference to 'Corporation Counsel' may itself be misunderstood by jurors as suggesting some association with a corporation or the City, leading to . . . associations with a deep pocket," *Flores*, 2016 WL 1060841, at *2.  Thus, the parties are not permitted to make any reference to the City on Bates stamped prefixes on documents admitted at trial, and on all documents bearing the case caption that will be put before the jury (e.g., verdict sheet).  Further, any reference to defendants' counsel as "City Attorneys" or "Corporation Counsel" is prohibited.

## IV. Objections to Trial Exhibits

Within their motions of limine, the parties also objected to the inclusion of certain trial exhibits at trial.

### A. *Plaintiff's Objections*

Specifically, plaintiff objects to the inclusion of defendants' trial exhibits: A (Facebook photo), B (event chronology), C (Ms. Cosares's deposition transcript), D (plaintiff's rap sheet), L (plaintiff's medical record regarding right elbow), portions of Q (plaintiff's medical record regarding right elbow), R (plaintiff's medical records including right foot bunionectomy), T (complaint in *Scoma v. United States*, 02-cv-2970 (JG) (E.D.N.Y.)), U (Decision and Order in *Scoma v. United States*, 02-cv-2970 (JG) (E.D.N.Y.)), W (second amended complaint in this action), X (first amended complaint in this action), Y (complaint in this action), Z (plaintiff's discovery responses in this action), BB (notice of claim in this action), CC (complaint in *John Scoma v. Man-Dell Food Stores, Inc.*, 3250/2013 (Kings Cty. Sup. Ct.)), DD (transcript of examination in *John Scoma v. Man-Dell Food Stores, Inc.*, 3250/2013 (Kings Cty. Sup. Ct.)), EE (transcript of examination in *John Scoma v. Man-Dell Food Stores, Inc.*, 3250/2013 (Kings Cty. Sup. Ct.)).

Plaintiff also seeks to supplement his exhibit list with the following exhibits: 6 (Brander's memo book), 7 (Taser

47

Report); 8 ESD2 Report for Case No. E6-2015-14713; and 9 ESD2

Report for Case No. E6-2015-14714. (Pl. Mem. at 7 n.1.) As

noted in this court's Chambers Practices, "[o]nly exhibits

listed in the pretrial order shall be offered in evidence except

when prompt notice has been provided, and good cause and a lack

of prejudice are shown." (Chambers Practices, Section IV.A.11.)

Plaintiff's proposed exhibits are not identified on the Joint

Pretrial Order and plaintiff has not offered a sufficient reason

why these belatedly identified exhibits should be permitted at

trial. (See Pl. Mem. at 7 n.1.) Further, defendants offer

several reasons why defendants would be prejudiced by the

inclusion of these exhibits. (See Def. Opp. at 6-8.)

Accordingly, the court precludes plaintiff's trial exhibits 6,

7, 8, and 9 identified by plaintiff at the present time. At the

Final Pretrial Conference, the plaintiff may renew his motion to

include exhibits 6, 7, 8, and 9 upon a showing of good cause and

lack of prejudice and, similarly, defendants may make any

objections.

      For the reasons set forth above, the court makes the

following rulings regarding defendants' exhibits:

- Exhibit A (Facebook photo) is relevant and admissible.

- Exhibits B (event chronology) and C (Ms. Cosares's

  deposition transcript) are relevant and admissible.

- Exhibit D (plaintiff's criminal history ("rap") sheet) is precluded.

- The court reserves decision regarding Exhibits L (plaintiff's medical record regarding right elbow), portions of Q (plaintiff's medical record regarding right elbow), and R (plaintiff's medical records including right foot bunionectomy). To the extent plaintiff's damages are limited to his left elbow, the court agrees that unrelated medical evidence is not relevant or admissible and will resolve any objections at trial.

- Exhibits T (complaint in *Scoma v. United States*, 02-cv-2970 (JG) (E.D.N.Y.)) and U (Decision and Order in *Scoma v. United States*, 02-cv-2970 (JG) (E.D.N.Y.)) are precluded. Exhibits CC (complaint in *John Scoma v. Man-Dell Food Stores, Inc.*, 3250/2013 (Kings Cty. Sup. Ct.)), DD (transcript of examination in *John Scoma v. Man-Dell Food Stores, Inc.*, 3250/2013 (Kings Cty. Sup. Ct.)), EE (transcript of examination in *John Scoma v. Man-Dell Food Stores, Inc.*, 3250/2013 (Kings Cty. Sup. Ct.)) are relevant and admissible. The court will admit evidence of plaintiff's left elbow injury from the Key Foods lawsuit to the extent it is relevant to damages or is used to impeach plaintiff.

- Exhibits W (second amended complaint in this action), X
  (first amended complaint in this action), Y (original
  complaint in this action), Z (plaintiff's discovery
  responses in this action), and BB (notice of claim in
  this action) are permitted for impeachment purposes.

### B. Defendants' Objections

Defendants object to the inclusion of plaintiff's
trial exhibit 5 (Helping Hands Therapy Center Records).  As
discussed above, the court sustains the defendants' objection to
the admission of plaintiff's exhibit 5 as lacking a proper
foundation under Rule 901 and hearsay under Rule 802.  (Def.
Mem. at 14.)  Because plaintiff contends that he has requested a
certified set of records and anticipates receiving such records
imminently, however, the court will permit plaintiff the
opportunity to authenticate exhibit 5 at the Final Pretrial
Conference.  (Pl. Opp. at 7.)  As discussed above, the court
also grants defendants' motion to preclude plaintiff's trial
exhibits 6, 7, 8, and 9 as untimely and prejudicial.  The court
will permit plaintiff to show good cause and lack of prejudice
at the Final Pretrial Conference why these exhibits should be
admitted.

**CONCLUSION**

For the foregoing reasons the court grants in part and denies in part the parties' motions *in limine*.  In sum, the court hereby:

**A.** GRANTS: Plaintiff's motion to preclude defendants from introducing evidence of: (1) plaintiff's prior federal lawsuit (*Scoma v. United States*, No. 02-cv-2970 (JG) (E.D.N.Y. 2002)) regarding his leg injury sustained while playing basketball and related exhibits; (2) plaintiff's workout regimen at the time of his arrest in September 2015; (3) plaintiff's medical steroid use unless explained by medical testimony; and (4) plaintiff's criminal history, arrests, and discharge from the military, unless necessary for impeachment.

The court also GRANTS defendants' motion to preclude plaintiff from: (1) requesting a specific dollar amount regarding non-economic injuries such as pain and suffering; (2) introducing medical evidence that is not certified or otherwise lacks a proper foundation or is not authenticated; (3) referring to defense counsel's employment by the City, any potential indemnification by the City, any reference to the City on the Bates stamped prefixes on documents admitted at trial, and on all documents bearing the

case caption that will be put before the jury (e.g.,
verdict sheet).

**B.** DENIES: Plaintiff's motion to preclude defendants from
introducing: (1) evidence or testimony regarding the
pre-tasing information to the extent the court has
found such information is relevant and admissible; (2)
testimony from officer witnesses as to the pre-tasing
events and discussions with Brielle Scoma and
Christina Cosares; (3) evidence from plaintiff's Key
Foods lawsuit as it relates to plaintiff's left elbow
and emotional injury; (4) plaintiff's Facebook photo;
(5) use of steroids if properly supported by medical
evidence; and (6) any litigation documents from this
action used for impeachment purposes.

     The court also DENIES defendants' motion to
preclude plaintiff from introducing a specific dollar
amount for compensable damages if supported by trial
evidence.

**C.** DENIES AS MOOT: Defendants' motion to preclude any
evidence of the officers' disciplinary histories or
prior lawsuits.

**D.** SUSTAINS:  Defendants' objection to plaintiff's
introduction of plaintiff's exhibit 5 (Helping Hands
Therapy Center Records).  The court will permit

plaintiff to offer proof at the Final Pretrial
Conference regarding the authenticity of plaintiff's
exhibit 5.

Similarly, the court the also sustains
defendants' objection as to plaintiff's trial exhibits
6, 7, 8, and 9 as untimely and prejudicial.  The court
will permit plaintiff to show good cause and lack of
prejudice at the Final Pretrial Conference why these
exhibits should be admitted.

**E.** RESERVES: The court will reserve its decision for
trial to rule on objections regarding: (1) plaintiff's
proposed charge to the jury regarding punitive
damages; (2) except as provided above, plaintiff's and
defendants' medical records; and (3) any evidence or
testimony noted above that is subject to further
review at trial.

Prior to the Final Pretrial Conference, the parties must confer to attempt to resolve their remaining evidentiary disputes and shall come prepared to offer proof as to those disputed exhibits.

The defendants Azeem Chatha, Fernando Caches, Damir Vukic, Argely Delacruz, Francisco Allende, Spencer Craven, and Gregory Mannino are dismissed with prejudice pursuant to plaintiff's letter dated May 3, 2021 (ECF No. 127) and Federal Rule of Civil Procedure 41(a)(2).

SO ORDERED.

_____/s/_____
HON. KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York

Dated: May 4, 2021
  Brooklyn, New York